May it please the Court, my name is Greg Byrne, I'm representing the Plaintiff Appellant. And if the Court would like, I wasn't planning on summarizing the facts, but if the Court would like, for the benefit of the students present, I'd be happy to do that. We have bigger items. Thank you, Your Honor, and I'd ask to reserve three minutes for rebuttal. My client is Brownstone Homes, which is a 140-unit condominium in Portland, and in 2007 Brownstone Homes sued A&T Siding and other contractors for certain construction defects, most prominently leaky siding. The siding is what they put on the side of the house. Yes, yes, it was a siding, correct. Wood siding or metal? No, it was a cementaceous siding called Hardy Plank. It's a cement-based siding. It's called Hardy Plank, Your Honor. But it leaked, and so my client sued the contractors, including A&T. A&T was insured by two companies, Zurich and Capital Insurance, the defendant here. Both companies assumed the defense of A&T under their policy. Capital, however, soon withdrew, claiming that it had evidence that there was damage that existed and was known prior to the inception of its policy, and therefore, was excluded from coverage by the terms of the policy. I would point out that to this day, Capital has yet to produce that evidence. But in any event, they withdrew from defending A&T, and A&T and Brownstone then went into mediation, and the case was settled via mediation. And the terms of the settlement were as follows. A&T agreed to entry of a stipulated judgment for $2 million. Of that, $900,000 would be paid by Zurich. Brownstone would give A&T a covenant not to execute on the balance of the judgment in exchange for an assignment to Brownstone of A&T's rights on the capital policy. A&T then — correction, Brownstone then filed the judgment, stipulated judgment, and proceeded to collect it by means of a writ of garnishment served on capital. Capital moved to dismiss the writ in Oregon State court on the ground that it did not — it did not provide coverage under the case of Stubblefield v. St. Paul. Now, the Stubblefield case — And that's been resolved. The Oregon courts have ruled there wasn't coverage per — under the original agreement per Stubblefield, right? That has been resolved. The — what the Court held in the State court garnishment proceeding was that Stubblefield applied. And in Stubblefield, which involved similar facts, the Oregon Supreme Court held that the — because the claimant gave the insured a covenant not to execute on the judgment, the insured was not legally liable for damages. And the policy only covers the insured's legal liability for damages. And therefore, there was no coverage and — The insured was released from liability, and the insurer only had an obligation pursuant to the insurance contract to cover the original insured. The insurer had no duty to indemnify the insured for that judgment. Right. And that's been resolved. But it seems to me that's off the table. And the question is really the second subsequent — the addendum settlement agreement, right? That is the core issue of this case. Following that decision by Judge Chamberlain, my client — And what's — what's in the addendum that — I'm getting to that. Okay. Following that decision, my client, Brownsville, went to A&T and said, you have a covenant of cooperation. You agreed to cooperate with us in pursuing the rights and claims assigned. We need to amend the settlement agreement to get rid of this problem, this Stubblefield problem, that is, the agreement not to execute on the judgment. So A&T and — and Brownstone signed an addendum under which the covenant does — the covenant not to execute only comes into effect when this case is resolved. And A&T then agreed to bring this case against Brownstone, using counsel selected by Brownstone and at Brownstone's expense. And the only party that was released under the addendum was Zurich Insurance, which had paid the $900,000. So this case was then filed, and Judge Acosta held below that the original decision in the garnishment proceeding foreclosed any further efforts to collect from the capital policy. Now, and he gave two reasons for that, which I submit both were wrong. The first reason he gave was that capital's policy only covers occurrences, and the signing the settle — the addendum was not an occurrence. It was a contract, and there is no coverage for contractual liability under a comprehensive general liability policy. Where Judge Acosta went wrong was in ignoring the case of Northwest Pump, which held that an insurer that wrongfully refuses to defend is liable for a reasonable settlement between an insured and a third party if the underlying event that gave rise to the third party action was covered under the policy. What Judge Acosta did — So that's just the problem, isn't it? The question is whether this potential liability arises from the original allegedly defective siding or whether that was extinguished pursuant to the first settlement agreement and, I'm going to say very imprecisely, unfairly revived by A&T and Brownstone entering into the addendum. That is the — that's generally stating the issue, Your Honor. What — what — where Judge Acosta went wrong here is in looking at the fact of settlement in determining whether there was coverage. That's inconsistent with Northwest Pump. And if Judge Acosta is correct, then any — any insurer in any case of this nature can say, we refuse to defend, and if you settle, your settlement will not be — we will not pay the settlement because that's assumption of a contractual liability. Would it apply to every assignment of a bad faith claim? Would — yes. Would Capital's argument apply to every assignment of a bad faith claim? Yes, I believe it would. So is it your position that any party can simply renegotiate a settlement agreement after an adverse court ruling in an attempt to revive the claims that a previous court determined were foreclosed? Well, it depends on what claims were foreclosed. Now, that's the second error that Judge Acosta made, was in holding that the parties were attempting to avoid the finality of the court's garnishment ruling. Where the judge went wrong was he assumed that the garnishment ruling was a final decision. Now, whether it's a final decision — and more about that in a minute, because I want to — I'm going to take apart the garnishment ruling. But whether an order — a court decision is final is determined by principles of res judicata, and Judge Acosta held that res judicata did not apply in this case. So his holding is inconsistent. Capital asserts that the judge was wrong and that it should have applied principles of res judicata, which on the facts of this case is absurd. As we all know, res judicata is designed to conserve judicial resources and prevent the harassment of defendants by repeated litigation. Capital insurance had it within its power from day one to produce the evidence it claims to have of prior known damage. It has chosen not to do that and instead to file reams of papers in this court, in the district court, in the Oregon courts. We're now in the Oregon Supreme Court, trying to avoid having to produce that evidence. Well, I guess I want to — I guess I want to understand. I mean, the underlying alleged liability in this case is Capital's obligation to A&T. Correct. Under the insurance policy. Correct. Well, wasn't that the same claim in the garnishment proceedings? Two different claims here, Your Honor. I want to understand why there are two different claims. Every insurance policy has — imposes two duties on the insurer, the duty to defend and the duty to indemnify. The only issue that was before the court in the garnishment proceeding was the duty to indemnify. That's the only issue that could have been before that court. Under the garnishment statute, the court — the Oregon State Court had no authority to decide an unliquidated claim, which was the duty to defend claim. The reason it was unliquidated is the issue is, was the settlement reasonable? If not, what is a reasonable figure for this settlement? That was not before Judge Chamberlain, nor could it have been before Judge Chamberlain. So what — So was there any obligations imposed upon capital based on the settlement agreement? And if there were, how was capital a party to that agreement? Capital was not a party to that agreement. All right. We asked capital to be a party to the case, and they said, no, we're not going to participate. There's another reason why that decision is not binding on the district court, and that was that in Stubblefield, the court held that St. Paul had — the insurer in that case had no duty to indemnify its insurer. It never addressed the duty to defend. And that — the duty to defend is addressed in Northwest Palm. Now, what's the difference? The difference is the duty to indemnify is determined by the terms of the settlement agreement, Stubblefield. The duty to defend is determined by the claim alleged, that is, the underlying event against the insurer and the terms of the policy, Northwest Palm. The State court did not reach that issue, nor did Judge Acosta reach the duty to defend issue. Judge Acosta also criticized the addendum as an attempt to avoid the finality of a — of the — of the garnishment ruling. What the court ruled there was that garnishment was not available as a remedy because of not having a duty to indemnify Stubblefield. It did not hold that either A&T or Capital was irrevocably released. It did not preclude a rearrangement of the parties' relationship that would allow collection of the judgment from Capital. That was the parties' intent in going into the original settlement agreement. We will — The court ruled that the parties, and I'm speaking of A&T and Capital, originally intended to effectuate the same deal that they wound up memorializing in the amendment. It was the same deal, yes. What we're trying to do is find a — Drafting error, correct? Your position is basically that the first settlement agreement incorrectly reflected the intent of the parties? As Judge Acosta said, it was an unintentional drafting error. It was not mine. It was another attorney to handle. I have to point that out. Regarding this characterization of A&T voluntarily assuming liability or exposure to liability in the subsequent agreement, is your response to that, which I can only sort of glean it a bit from the briefing, but it seems to me that your response is that pursuant to the original settlement agreement, A&T had a duty to cooperate? To effectuate the parties' original intent?  That is my position. But conceptually, any settlement agreement is a voluntary assumption of liability. And if Judge Acosta's analysis is a — No, it's not. It's not. Prior to this agreement, A&T didn't have the liability. And there's a question about whether it was extinguished, right, as in Stubblefield, so that A&T could have walked away. Correct. And that's certainly going to be your opposing counsel's position. Right. And I'm just trying to make sure before you leave the podium that I understand that your position is that this was our original intent and that that's not disputed. Correct. Because I'm going to ask him the same question, and that A&T did not voluntarily assume this obligation. They had it pursuant to the agreement to cooperate to facilitate the original intent. We did, but it doesn't matter whether he did it voluntarily or not. I think it might matter a lot. That's why I'm asking the question. Why do you think it doesn't matter? I don't think it matters, Your Honor, because the parties had the right to amend their settlement agreement. Your position is that had this been voluntarily assumed that capital would be on the hook for it? No, Your Honor. Surely not. Before the original settlement agreement was signed, A&T was not liable. It assumed that liability in the original settlement agreement. I don't hear an answer to my question. Are you really arguing that had A&T voluntarily assumed this obligation, capital would be on the hook for it? What I'm saying is that any time an insured enters a settlement agreement, unless it has a gun to its head, it's voluntary. I didn't hear an answer to the question, counsel. That is the answer, Your Honor. There's no distinction between. I know where you're coming from on this, and our position is, on the record, our position is yes. They had an obligation under their covenant of cooperation to cooperate with us in pursuing these claims against capital. And that included recasting this settlement in terms that would not run afoul of Stebblefield. Now, my point is, if you consider the addendum to be a voluntary assumption of liability, why wouldn't you consider the original settlement agreement to be a voluntary assumption of liability? A&T wasn't liable until it signed that, agreeing to a $2 million judgment. You and I have a sharp difference of opinion on this point, so I don't want to use that as an excuse. I ask that you think about it, Your Honor. I just have one question on the attorney's fees claim. The magistrate judge ruled on the cross motions for summary judgment, and the Rule of Law, and the judge's claim then was dismissed for lack of jurisdiction. And are you raising any challenge to that jurisdictional dismissal? No, I'm not, Your Honor. I had the option of recasting the complaint entirely, and I chose to stand on the complaint as filed and bring it to this Court for decision. So the issue is whether Judge Acosta's summary judgment was correct or not. Thank you. Good morning.  I'm Brian Hickman, appearing on behalf of Defendant Capital Specialty Insurance Corporation. This case for us has always been about claims of inclusion. We're, of course ---- But you lost on that issue. Correct. Correct. But that's the way we have approached it. We, of course, agree with the result, the ultimate result that Judge Acosta reached, so we believe we can support it either through his reasoning or through our original motion that the entire case should have been dismissed on claims of inclusion. The reason I raise that is the last bit of questioning with opposing counsel concerned whether the signature on the settlement addendum was voluntary and it had an interplay with the cooperation clause in the original settlement agreement. And I just want to point out that the cooperation clause was argued repeatedly in the first lawsuit. It was stated that the covenant not to execute was not unconditional because it was conditioned on cooperation. Well, that's been directly addressed by the Oregon State courts. The Oregon Court of Appeals issued its opinion in February of this year. But they weren't addressing the second agreement. No, they were not. But they did address the cooperation clause, and they specifically rejected the argument that the cooperation clause rendered that covenant not to execute as not unconditional, that it rendered it conditional. I apologize. Could you do that with fewer double negatives? I apologize. That's okay. I just want to make sure I get it. Let me just read what the court of appeals said. Thank you. Plaintiff argues that the non-execution covenant here was material qualified by AMT's agreement noted above to reasonably and in good faith cooperate with plaintiff in pursuing the rights and claims assigned. Capital responds, and we agree, that VanCaster is materially distinguishable and that the non-execution covenant between plaintiff and AMT was unambiguously unqualified. Long way of getting to the point of the signature was voluntary because you had a ruling saying that you have an unconditional covenant not to execute. So on day one, you know, after that decision, the insured has no liability. The court's even said that the cooperation clause doesn't render this unconditional. Day two, he signs the settlement agreement, the settlement addendum, and suddenly he's liable again. It doesn't seem to me quite that cut and dried, and I'm not sure that the Oregon courts have really reached this issue. What strikes me is a policy issue that it may be appropriate for the Oregon courts to decide. But let me just clarify a couple of points. It seems to me if the ruling goes the way you want it to go, Capital receives quite a windfall as a result of a drafting error by its own insured. Isn't that right? I would not say so. Well, it hasn't been established that your client didn't have a duty to indemnify under the original agreement. I realize that your client chose to withdraw its defense, but that's never been litigated. Correct. We are prepared to litigate it when we notice this issue, which I'm saying it's not a windfall because this is a liability insurance policy. The coverage grant is the insured has to be liable. So when the insured isn't liable, when the insured's completely off the hook, the insured's fine, the carrier has no responsibility. You don't characterize that as a windfall? No, I do not. My question was isn't it a windfall that's brought about by the insured's drafting error, and your response is no?  Why not? Because what happened as a result of the original settlement is the insured was completely relieved of liability. That was the drafting error. Benefit. Correct. Our contract's with the insured. Our insured underlying lawsuit, our insured escaped from that underlying lawsuit with no liability. So you're not answering my question. My question is, you insured A&T. Correct. And A&T entered into a contract that they have pretty much fallen on their sword, and A&T and Brownstone have said this was an error. Trial court, the lower court, indicated this was an error. And my question for you is wouldn't your client, Capital, be in a position of benefiting from that drafting error? And I can't imagine why you're saying no. I'll try to explain one more time, but then we could move on, is that the point of the insurance is to protect the insured. Right. The insured was protected because he got out with no liability. He's out 1.1. I mean, there's $1.1 million that are unaccounted for. That's the plaintiff. That's a third party to the insurance contract. The insured has no liability. Our liability insurance. Because of the drafting error, right? There's a drafting error. Correct. The drafting error in favor of the insured. What's implicit in that deal is that the balance somehow is still alive, and they're going to help the party that suffered the loss collect that million dollars. So they do have an obligation, at least in that regard. So you're saying is that, yeah, you agreed to help because of whatever this drafting error. Now you're relieved of it. So it's like pulling a rabbit out of a hat. So the insured had potential liability. The insured, through the original settlement, through a drafting error, escaped with no liability. That's the point. If the settlement had been written like the settlement in the first place, then the case would have proceeded differently. We wouldn't have raised the stubble-filled argument. We would have defended on the merits. The insured didn't escape without liability because they agreed. I mean, implicit in that deal was that they would help the property owner go after your company. And that was all hinged on that. And the Oregon Court of Appeals ruled that that did not matter, that because of the law. I don't care about that. I'm just telling you the way I look at it. Right. You're getting a windfall. I don't think we can fault the insurance company for raising a defense that appeared. We're trying to get you to answer the question, counsel. That's all. Yeah. And I don't want to concede a windfall because I disagree fundamentally that it's the legal obligation to pay if there isn't. Well, just say if you have the legal obligation to pay, it's a windfall. Correct. Right. And since there was not a legal obligation to pay. Moving past that, to the point of our argument, no, it would not apply to every assignment of a bad faith claim. This case has unique circumstances. This has where a court has ruled that there's no legal obligation to pay. And then there's a settlement that tries to create a new legal obligation to pay. If they assigned it correctly, they wouldn't have this problem. Correct. That's what this whole case is about. Correct. Yes. And that's what the entire arguments were from the Oregon Court of Appeals. And what the. I'm speaking only to the portion of your argument that characterized his client's actions as the, or actually A&T's actions, as the voluntary assumption of liability. Sure. And there's, going to that point, the insured obviously had other options. He could have said. The policy is the law. But the law is to encourage settlements. And we're going to discourage settlements when these two big insurance companies are grappling with each other. And that issue is currently before the Oregon State courts. The plaintiff has petitioned for review to the Oregon Supreme Court and has asked the Oregon Supreme Court to overturn Stubblefield. That's on the first agreement, right? Correct. Yes. Yes. But the large policy issue of encouraging settlements versus. I mean, that goes to whether Stubblefield is the correct law or not. Why would this second addendum be before the Oregon Supreme Court? It is not before the Oregon Supreme Court. That's the large policy issue, isn't it? Whether they should be permitted to correct their drafting error is the large policy issue, I believe. Certainly. Certainly. But that issue, for whatever reason, rather than asking for reconsideration from the first court or moving for a new trial on the basis of new evidence, we have a second lawsuit. So that's the reason why it's disjointed. Because the second agreement isn't part of the first lawsuit, counsel. Correct. It's not a part. So the question won't be resolved in the first lawsuit. The question of whether Stubblefield is correct will be resolved in the first lawsuit. If Stubblefield is not correct, then this whole matter is moved. Because then we're way back to square one anyhow. I'm getting you to answer my question, but I think I understand the response. And I apologize. That's okay. It's a minor point. It's just a simple point is all. And that is that Stubblefield only speaks to the first agreement. That's well-settled law in Oregon. But it seems to me that the policy issue is whether the party should be able to effectuate their original intent, right, in the addendum, the second agreement. And that's not going to be resolved in the first suit. I think that's what you did answer. Okay. Right. And so, you know, I think the issue in this lawsuit is whether you can amend your settlement to correct that problem, also while simultaneously pursuing your claims under the original settlement in the State court proceedings. That's why that's always been a problem for us. We've been fighting this on two fronts. We're hearing the same arguments in both cases. The Northwest pump argument that you just heard now, that was made in the underlying lawsuit. That's at supplemental excerpt of record, page 54, where plaintiff's counsel tells the Multnomah County circuit judge, yes, I am arguing the dissent from Northwest pump. There was a wrongful breach of the duty to defend. Therefore, there's a duty to indemnify. That's the same argument we're receiving now in this Court, that Judge Chamberlain in Multnomah County Circuit Court already rejected. But here they made a deal with the insurance company that they settled with, and they agreed, apparently, on an overall amount. And the company they settled with paid them something like $900,000. And of course, I suppose maybe you have joint and several liability here. I'm not sure. But that insurance company didn't want to be on the hook for the money that they're trying to get out of your client. So they said, well, don't worry, but we're not going to execute this judgment. We don't get the other money on you, as we expected to get it from them, and you're going to help us. Yeah, okay. Well, it turns out that somehow through the narrow twists and turnings of the law that that didn't work out. Well, the one stumbling block was their agreement not to execute. So they get together and say, well, let's set that aside. We didn't know what the consequences would be. Neither did you, like a mutual mistake. So they do that. So now the decks are clear. They come after you. The problem is that there was no liability of the insured prior to the execution of the agreement. And the court has said it was extinguished by the first agreement. But it hasn't reached the second agreement. Correct. Because it was never brought to that court's attention. That's why we're here. Exactly. Correct. And our point on why this is all should be claim precluded is the focus of claims preclusion is on the defendant's conduct. We're being sued in two separate lawsuits for allegedly wrongfully failing to execute and failing to defend. It's the same allegation. It's the same conduct. It's two different lawsuits seeking the same relief, except in this one they've added in some defense costs and a claim for punitive damages. And so I'm sorry. I said you might want to settle this case. Well, Your Honor, the insurer that did pay, Zurich, did sue Capital as well. And that case has been settled, if that helps. So there's three different lawsuits arising out of these same facts against Capital, just for the Court's information. It's always going to be law business. It does keep us very busy. And frankly, as I suspect you can understand, the client's rather frustrated over how much it's had to pay in litigation costs defending this three different ways. And he's pretty frustrated that their insurance company decided not to defend  So everybody's frustrated. Understood. Understood. Have you ever read Charles Dickens' Leap House? You ought to read it. It's fascinating. It's timely. And towards the end, it's a wonderful book, towards the end he writes that the overarching principle is to always keep itself in business. That's why we have the sentencing guidelines, keeping ourselves in business. You see? That's why we have all these complicated immigration rules to keep ourselves in business. So that's what we're doing with you, too. I understand. I understood. And thank you, but on behalf of my client, I think they would prefer that this case be finally put to an end. Now you've frightened him and he wants to sit down. Thank you. If there's no further questions. Well, what are you going to say? I sometimes feel this case is closing in on Jarndyce v. Jarndyce. The overarching principle in this case, which capital refuses to concede, is that insurance is just not a contract with their insured. The insured is not doing that for its own protection. The insured is getting this insurance for protection of the public. This is public liability insurance, and it's required of all contractors in Oregon to protect the public, not just the insured. So any reference to contract between, with just the insured, misses the point. I'm glad there's someone who worries about the public. Sorry, Your Honor. I'm glad to hear there's someone like you who worries about the public. Thank you, Your Honor. Right now I'm concerned about my client. Counsel read from the court of appeals opinion that plaintiff's agreement, and I'm reading from the same page, plaintiff's agreement not to execute the judgment against A&T was not conditioned upon A&T's continued cooperation. Rather, the non-execution agreement was unqualified. Well, it was conditioned on, it wasn't conditioned on the covenant cooperation. It was conditioned on Brownstone having the right to collect insurance proceeds from capital to the extent that capital's policy covered the loss. And we did not get that. That was the condition that, under which we gave the non-execution agreement. Regardless of whether A&T was compelled to sign this by the covenant cooperation or whether it did so voluntarily, had it refused to sign it, A&T would then be subject to liability for breach of contract. And the damages that would be assessed there would not be covered by insurance. So A&T was taking a substantial risk in not signing the addendum as requested by Brownstone. You mean would have been? Would have taken a risk had it not signed the addendum. We've argued this thing. I'm sorry, Your Honor. I'm a little hard of hearing. Well, that's all right. Want me to turn my hearing aids on for you? My wife is trying to get me to buy one. That would be a good idea. Get your ear closer. Yes, sir. I think we have your argument well in hand. Then I will sit down. Thank you. Thank you.
judges: Pregerson, Murguia, Christen